2018 BNH 010       Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                    Bk. No. 17-11008-BAH
                                                                                          Chapter 7
Charles A. Burrows, Jr.,
        Debtor

*Richard D. Gaudreau, Esq.*
*Salem, New Hampshire*
*Attorney for Debtor*

*William M. Gillen, Esq.*
*The Law Offices of Wm Gillen P.C.*
*Manchester, New Hampshire*
*Attorney for Debtor*

*Clifford Gallant, Jr., Esq.*
*Beliveau, Fradette & Gallant, P.A.*
*Manchester, New Hampshire*
*Attorney for Michael S. Askenaizer, Chapter 7 Trustee*

## MEMORANDUM OPINION

### I. INTRODUCTION

The Debtor, Charles A. Burrows, Jr. (the "Debtor"), owns two adjoining parcels of real estate.  He claimed a homestead exemption under New Hampshire law in both parcels.  The chapter 7 trustee, Michael S. Askenaizer (the "Trustee"), objected to the Debtor's claim of homestead exemption to the extent it covered the parcel of land that abuts the parcel on which his residence is located (Doc. No. 74) (the "Objection").  The Court held an evidentiary hearing on October 23, 2018, and took the Objection under advisement.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

In 1988, the Debtor bought a home located on .56 acres of land on Old Dover Road in Rochester, New Hampshire.  Ex. 4.  The property has an address of 155 Old Dover Road and is referred to as Lot 94 by the City of Rochester ("Lot 94").  In 2003, the Debtor acquired title to a 1.09 acre lot of undeveloped land abutting his residential property.  Ex. 5.  The undeveloped lot has an address of 157 Old Dover Road and is referred to as Lot 93-1 by the City of Rochester ("Lot 93-1").  In 2004, the Debtor hired a surveyor and sought a lot line revision from the Rochester Planning Board.  According to the Debtor's lot line revision application, the purpose of the lot line revision was "[t]o give lot 94 more side yard and frontage."  Ex. 6.  The lot line revision was approved by the City and was recorded in the county registry of deeds in 2005.  It expanded the size of Lot 94 to .84 acres and reduced Lot 93-1 to .82 acres.  Ex. 7. [1]

In 2011, the Debtor sought a further lot line revision from the Rochester Planning Board.  Ex. 8.  According to the Debtor's lot line revision application, the purpose of that lot line revision was "to get everything they owned onto one lot."  Exs. 8 and 10.  The Debtor further explained that "I ended up placing some propane tanks and part of a goldfish pond slightly onto the adjacent lot.  I wish to slightly move the property line to include this."  Ex. 8.  The lot line revision was not approved until 2014, due to delays not relevant to this proceeding.  As a result of the second lot line revision, the size of Lot 94 was expanded yet again.  Lot 94 consists of .90 acres and Lot 93-1 consists of .74 acres.  Exs. 11 and 12.[2]

---

[1] The Court recognizes that the total acreage for both lots does not precisely add up, i.e., 1.65 total acres before the lot line revision and 1.66 total acres after the lot line revision; the Court attributes the difference to rounding.

[2] Again, the Court recognizes that the total acreage for both lots does not match the earlier plans, i.e., after the second lot line revision the acreage purportedly totaled 1.64 total acres.  The Court also attributes this difference to rounding.

2

The Debtor filed for bankruptcy under chapter 13 on July 18, 2017 (Doc. No. 1).  On Schedule A/B, he valued his "[h]omestead property consisting of a single family home located on approximately 1.8 acres of land" as being worth $240,000.00 (Doc. No. 14).  On Schedule C, the Debtor asserted an exemption under New Hampshire Revised Statutes Annotated ("RSA") 480:1 in the amount of $94,363.51 in property he described as "155 Old Dover Road Rochester, NH  03867 Strafford County, [h]omestead property consisting of a single family home located on approximately 1.8 acres of land."[3]  On March 21, 2018, the Debtor converted his case to one under chapter 7 (Doc. Nos. 31 and 33).  The Trustee conducted two meetings of creditors, one on April 17, 2018, and a second on June 5, 2018.

At the second meeting of creditors, the Trustee's attorney questioned the Debtor about the reasons for the two lot line adjustments.  The Debtor indicated that "some of my building that I did, [it] went over the property line, so I had them reset the line." Ex. 1 at 14-15.  The Debtor further testified that one of the reasons for the first lot line adjustment was because "I was thinking of selling it, the lot." Id. at 16.  The Debtor indicated that the purpose for the second lot line revision was also so that he could "try and sell it." Id. at 18.  The Debtor testified that at the time he filed for bankruptcy he had no use for Lot 93-1. Id. at 19.  The exchange was as follows:

> MR. GALLANT: So the purpose of the second one was what again?
>
> MR. BURROWS: To try and sell it.
>
> MR. GALLANT: Okay. So, as the time of the filing of the bankruptcy, what use, if any, did you - - have you had as it relates to the second lot at all?
>
> MR. BURROWS: Nothing.
>
> MR. GALLANT: Nothing.

---

[3] It appears the Debtor sought to exempt his equity in the two parcels.  The Court notes that, on August 29, 2017, Citizens Bank NA filed a proof of claim indicating it held a claim in the amount of $166,311.47 secured by a mortgage dated December 21, 2012, on real estate described as 155 Old Dover Road, i.e., Lot 94.  Apparently, Lot 93-1 is unencumbered.

3

      MR. BURROWS: Just sits there.

      MR. GALLANT: Just sits there. You don't use it at all?

      MR. BURROWS: No.

      MR. GALLANT: Have you ever used it?

      MR. BURROWS: No. It's just all trees. It's all wooded.

Id. at 18-19.

On June 27, 2018, the Trustee filed the Objection to the Debtor's claimed homestead exemption in Lot 93-1 on the grounds that the Debtor did not use Lot 93-1 in connection with his residence. He based his contention on the lot line revision applications, which show that the Debtor intended to keep his residence, and his everyday use in conjunction therewith, within the confines of Lot 94. The Trustee indicated his position was reinforced by the Debtor's testimony during the second meeting of creditors, wherein the Debtor stated that he did not use Lot 93-1.

The Debtor filed a response to the Objection on July 24, 2018, in which he characterized his June 5 creditor meeting testimony concerning his lack of use of Lot 93-1 as "faulty" and "inaccurate," which he attributed to his own "simple mistake." His response painted a much different picture than his June 5 testimony. He indicated that for many years prepetition, and continuing to the present, he has used significant portions of Lot 93-1 in direct and regular connection with his homestead property (Doc. No. 88). The Trustee filed a reply addressing the Debtor's contentions (Doc. No. 89), pointing out that the Debtor's change of position on his use of Lot 93-1 was dramatically inconsistent with prior statements made by the Debtor (or on his behalf) in the lot line revision applications, and challenging the sufficiency of the Debtor's use of Lot 93-1 as part of the homestead.

The Court held an evidentiary hearing on the Objection on October 23, 2018, at which the Debtor, his landscaper, and the Trustee testified. The Debtor presented photographic

4

evidence to demonstrate his use of Lot 93-1.  Exs. 101-123.  The photos showed that trees on a section of Lot 93-1, which had been completely wooded at one point, were removed and grassed over.  Exs. 101, 102, and 123.  The Debtor testified that the grassy area is used for recreational activity when he hosts parties at his home.  The Debtor also placed a low, hexagonal wooden "deck" on that grassy area on which he places lounge chairs in the summer.  Exs. 106, 108, 114, 121, and 122.  The deck appears to be only several inches high, constructed of one layer of pressure-treated boards affixed to a thin wooden base.

      The photos further showed that a portion of the Debtor's parking area has been expanded into Lot 93-1.  Exs. 103 and 112.  The Debtor testified that he uses the parking area for when he has large gatherings of family, friends, and co-workers over to his home.  He also indicated that he pushed the snow from his driveway into the separate parking area in the winter.  In addition, the Debtor's landscaper testified that a portion of the Debtor's underground irrigation system runs under the expanded parking lot area on Lot 93-1.  He also stated that two sprinkler heads and an irrigation junction box also are situated just over the line onto Lot 93-1.  Exs. 103, 110, and 118.  The photos also showed that a roughly ten-foot section of a fence on Lot 94 runs into Lot 93-1.  Exs. 109, 113, and 117.  The fence shields the parking area from the view of the Debtor's backyard, including his swimming pool, which is located on Lot 94.  Lastly, a large propane tank, which is behind a small section of fencing, also sits just over the line onto Lot 93-1.  Exs. 106 and 107.  According to the Debtor, the propane tank is used to heat a gazebo that is wholly situated on Lot 94.

**III.  DISCUSSION**

      Pursuant to 11 U.S.C. § 522(b)(3), debtors in bankruptcy may claim exemptions in their property under state law.  The Debtor has asserted a homestead exemption in both Lot 93-1 and

5

Lot 94 under RSA 480:1, which grants New Hampshire residents the following homestead exemption: "Every person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead." The party who objects to a debtor's claim of exemption has "the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr. P. 4003(c). Accordingly, the Trustee must prove that the Debtor's homestead exemption has not been properly asserted.

The Trustee does not object to the Debtor's claim of homestead exemption in Lot 94, the lot on which the Debtor's home is located. Instead, the Trustee objects to the Debtor's claim of homestead exemption in Lot 93-1 and contends, after the evidentiary hearing, that the Debtor's use of Lot 93-1 is inadvertent and unintentional and that such incidental use of Lot 93-1 is not necessary for the Debtor's use and enjoyment of his home on Lot 94. The Debtor contends that he expended time and money in maintaining and improving Lot 93-1, prior to his filing bankruptcy, and that these improvements have been regularly used by the Debtor and have been integrated into his homestead. The Debtor argues that Lot 93-1 was therefore properly exempted pursuant to RSA 480:1.

The term "homestead" is not defined in the homestead statute. The New Hampshire Supreme Court has indicated that "'[h]omestead' means home place, or place of the home." Austin v. Stanley, 46 N.H. 51, 52 (1865). It is "the home, the house, and the adjoining land, where the head of the family dwells; the home farm. It does not extend to other tenements, lots and farm, that are not occupied personally by the owner and his family; houses in which they do not dwell, and farms on which they do not live." Hoitt v. Webb, 36 N.H. 158, 166 (1858) (quoted in In re Myers, 323 B.R. 11, 13 (Bankr. D.N.H. 2005)). "Under New Hampshire law the homestead need not be a single parcel of land on which the debtor dwells." Myers, 323 B.R. at 13. "Rather, it is enough if the parcel is actually and conveniently used by the debtors in

6

connection with the house where they live and is necessary to the convenient enjoyment of the house by them as a home." In re Haseltine, 2007 BNH 037, 5 (citing Myers, 323 B.R. at 13; Libbey v. Davis, 68 N.H. 355, 356 (1895)). "'Actual use' by the owners is the controlling factor." Haseltine, 2007 BNH 037, 5 (quoting Myers, 323 B.R. at 14).

      A review of the evidence shows that the Debtor "actually and conveniently uses" Lot 93-1 in connection with the enjoyment of his home located on Lot 94. Trees were removed from Lot 93-1, at some expense to the Debtor, to prevent shading on the grass and plantings on Lot 94. After the trees were removed, the Debtor created a grassy area which the Debtor uses when he has gatherings at his home for things like tossing a ball. In addition, the Debtor has placed a wooden deck on that section of Lot 93-1 upon which he places lounge chairs that he uses in the summer after getting out of his swimming pool, which is located on Lot 94.

      In addition, part of the Debtor's irrigation system, which benefits Lot 94, is located on Lot 93-1. The Debtor spent $5,000.00 to have the whole system installed; the Debtor's landscaper testified that it would cost approximately $2,000.00 to have the irrigation system reconfigured so that the entire system sits on Lot 94. It was undisputed that a portion of the Debtor's parking area is also contained on Lot 93-1.

      While the Trustee argues that the Debtor's use of Lot 93-1 was "inadvertent" and "unintentional," that is not the test. Rather, at issue is whether the Debtor "actually uses" Lot 93-1 as part of his "home place" and whether it is "convenient" to use that land so that he can "enjoy" his house located on Lot 94. It is clear that the Debtor does so. Granted, the Debtor's testimony at his June 5 meeting of creditors was starkly to the contrary, and it is not at all surprising that the Trustee filed the Objection just a couple of weeks later. And the Court does not fully credit the Debtor's self-described poor eyesight and inability to clearly read some of the fine print on the site plans shown to him at the June 5 meeting as justifying his possible

misunderstanding of the questions the Trustee asked that day, since the record of the Debtor's answers to the Trustee's counsel's questions did not evidence any inability of the Debtor to either understand the questions or know to which part of the property they related.  Nonetheless, the Court, after listening to the Debtor's testimony and observing his demeanor during the trial, found the Debtor's testimony concerning his use of both lots to be both credible and adequate.

The Court notes further that in determining whether a debtor has properly asserted a homestead exemption, the Court must construe the claimed exemption "liberally" in order "to insure the beneficial purpose of the provision."  Currier v. Woodward, 62 N.H. 63, 66 (1882); see also In re Furlong, 2017 BNH 012, 6; In re Iodice, 2014 BNH 013, 4; Haseltine, 2007 BNH 037, 3; Buxton v. Dearborn, 46 N.H. 43, 44 (1865) (stating "the statute should have a liberal interpretation to accomplish the object of the law"); Hoitt, 36 N.H. at 166 ("We are not inclined to limit or restrict the operation of the act, but to give it as liberal a construction as the legislature intended.").  Accordingly, the Court concludes that Lot 93-1 constitutes part of the Debtor's homestead and was properly claimed as exempt under RSA 480:1.[4]

## IV.  CONCLUSION

As the Debtor has properly claimed a homestead exemption in Lot 93-1 in addition to Lot 94, the Trustee's Objection is overruled.  This opinion constitutes the Court's findings of fact

---

[4] The result in this case comports with other decisions from this district where the Court has found largely undeveloped land to be part of a debtor's homestead and properly exemptible.  See, e.g., Iodice, 2014 BNH 013 (concluding that the debtor was entitled to assert a homestead exemption in an adjoining 24.8 acre parcel of real estate that was once used to gather firewood and pasture horses, in the absence of any evidence by the objecting party that such use had ceased on the petition date); In re Evarts, 2006 BNH 024 (concluding that the debtors were permitted to claim a homestead exemption in their entire parcel including a cottage and 30.76 acres of undeveloped land).

and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date: December 12, 2018  /s/ Bruce A. Harwood
Bruce A. Harwood
Chief Bankruptcy Judge

9